**344**

John M. GIDNEY, Petitioner,

v.

Dr. H. W. STERLING, Director of United States Veterans Administration Hospital, Ft. Roots, North Little Rock, Arkansas, Respondent.

No. LR-62-C-29.

United States District Court
E. D. Arkansas, W. D.

Feb. 23, 1962.

Ancil M. Reed, Little Rock, Ark., for petitioner.

James W. Gallman, Asst. U. S. Atty., Little Rock, Ark., for respondent.

HENLEY, Chief Judge.

On February 9, 1962, petitioner, John M. Gidney, a mental patient presently confined in the United States Veterans Administration Hospital, Ft. Roots, North Little Rock, Arkansas, filed a verified petition for a writ of habeas corpus for the purpose of securing release from custody. The Court having examined the petition, an order to show cause was issued and made returnable on February 12, 1962. 28 U.S.C.A. § 2243. On the date last mentioned respondent filed a response to the order to show cause. A hearing was held in open court on the petition and response, and at the conclusion of the hearing the Court announced orally that the order to show cause would be discharged and the petition dismissed. The Court also announced that shortly it would file a memorandum setting forth its reasons for the action taken. This is now being done.

The petition alleges in substance that petitioner is confined by respondent under and by virtue of a commitment issued by the Muskogee County Court, Muskogee, Oklahoma. It is asserted that the commitment was illegal in that petitioner in connection with the proceedings had in Oklahoma was not afforded the assist-

ance of counsel and was not permitted to call medical witnesses to testify in opposition to the charge of insanity. The Court construes other allegations in the petition as being sufficient to charge that petitioner's present confinement amounts to a deprivation of liberty without due process of law and is in violation of petitioner's rights under the Constitution of the United States. Petitioner also takes the position that he is not now incompetent, if he ever was.

In his response to the order to show cause respondent states that petitioner is in his custody pursuant to an order issued by the Oklahoma court committing petitioner to the State Mental Hospital at Vinita, Oklahoma, and that petitioner was delivered to the custody of respondent pursuant to application of his guardian, Susie T. Gidney.

In the course of the hearing respondent introduced in evidence a copy of the commitment issued by the Oklahoma court and also produced the files of the hospital relevant to petitioner's case. Dr. Henry M. Hawkins, Chief of Psychiatric Service at the hospital, testified that on May 17, 1960, petitioner's guardian applied to the hospital for care and treatment of petitioner who was then confined in the Oklahoma institution; that since petitioner's incompetency was not service connected, the application was not entitled to priority, and that petitioner could not be transferred to Ft. Roots until bed space was available for him. Following telephonic communications between hospital personnel and personnel of the Oklahoma institution, arrangements were made to admit petitioner to Ft. Roots early in August 1960. On July 27, 1960, petitioner's transportation from Vinita, Oklahoma, to Ft. Roots at Government expense was authorized. Petitioner was admitted at Ft. Roots on August 3, 1960, and his guardian was notified on August 4, 1960. On April 21, 1961, petitioner was released from the hospital and was placed in an approved foster home. However, on ac-

count of intoxication and disorderly conduct he was returned to the hospital by two deputy sheriffs on June 7, 1961, and has been confined there since that time. In Dr. Hawkins opinion petitioner is mentally incompetent, his difficulty being a chronic brain syndrome with psychotic reaction due to alcoholism.

At the threshold of any habeas corpus case the Court must determine whether it has jurisdiction to issue the writ and to grant relief thereunder. While the writ of habeas corpus has been said to be a "writ of right," it does not issue as a matter of course, and the power of the district courts to proceed in habeas corpus cases is regulated by federal statute.

Under the provisions of 28 U.S.C.A. § 2241 the writ extends to a person who is "in custody under or by color of the authority of the United States," or who is confined anywhere within the jurisdiction of the respective federal courts "in violation of the Constitution or laws or treaties of the United States." However, where a person is in custody "pursuant to the judgment of a State court," a federal court may not grant relief by way of habeas corpus unless and until the petitioner has exhausted available State remedies, or has shown that there is an absence of available State corrective process, or that in the circumstances of the particular case existing States remedies are ineffective to protect the rights of the petitioner. 28 U.S.C.A. § 2254.

The Veterans Administration, as such, neither has nor claims any independent power to hold insane veterans in involuntary custody except perhaps in emergency situations. The involuntary confinement of an incompetent veteran in a Veterans Administration hospital must be based upon a judicial determination of insanity followed by an appropriate commitment. In States which have adopted the Revised Uniform Veterans' Guardianship Act, which States in-

clude both Arkansas and Oklahoma,[1] the commitment may be to the Veterans Administration directly, or an eligible veteran committed originally to a State institution may be transferred to a Veterans Administration facility. Uniform Act § 18; Okla.Stat., Ann., Title 72, § 126.18; Ark.Stats., 1947, § 57–518.

Section 18(1) of the Act provides in substance that when the appropriate State court adjudges a veteran to be insane and in need of confinement, and when the veteran is eligible for admission to a Veterans Administration hospital, and when facilities at such hospital are available, the veteran may be committed to such institution rather than to a State institution for the mentally ill. The Act further provides, however, that in such cases the State courts retain jurisdiction to inquire at any time into the mental condition of the person so committed and to determine the necessity for continuance of his restraint, and that all commitments to Veterans Administration hospitals under the Act are so conditioned.

Section 18(2) recognizes that persons entering a Veterans Administration hospital located within the enacting State may have been committed to such an institution by a court of another State. In such case the committing court is deemed to have retained jurisdiction of the person so committed for the purpose of inquiring into his mental condition and determining the need for his further confinement.

Section 18(3), insofar as here pertinent, is as follows:

"(3) Upon receipt of a certificate of the Veterans Administration * * * that facilities are available for the care or treatment of any person heretofore committed to any hospital for the insane or other institution for the care or treatment of persons similarly afflicted and that such person is eligible for care or treatment, the superintendent of the institution may cause the transfer of such person to the Veterans Administration * * * for care or treatment. Upon effecting any such transfer, the committing court or proper officer thereof shall be notified thereof by the transferring agency. * * *

"Any person transferred as provided in this section shall be deemed to be committed to the Veterans Administration * * * pursuant to the original commitment."

■ From the record before it, including statements made by counsel for respondent, the Court finds that petitioner was committed originally by the Muskogee County Court to the Oklahoma mental institution which has been mentioned, and was subsequently transferred to the Veterans Administration hospital at Ft. Roots pursuant to section 18(3) of the Uniform Act, supra; that the warrant for petitioner's continued confinement is the original Oklahoma commitment; and that the Veterans Administration recognizes the continued jurisdiction of the Oklahoma court with respect to petitioner's person, and will honor any order of the Oklahoma court vacating the original commitment or directing that petitioner be released from custody.[2] And the Court further finds that although petitioner is physically confined in a federal institution operated

1. Ark.Stats.1947, § 57–501 et seq.; Okla. Stat., Ann., Title 72, § 126.1 et seq. For overall comment on the Act see 9C ULA pp. 318–322 and 346–347. See also Annotation in 173 A.L.R. 1061.

2. It is noted that petitioner's transfer from Vinita to Ft. Roots was handled somewhat informally and perhaps not in strict compliance with section 18(3) of the Act in that the Veterans Administration never issued a "certificate * * * that facilities are available for the care or treatment" of petitioner. While the Court does not consider this informality and possible lack of strict compliance with the Act to be dispositive of this case, the Veterans Administration would do well in the future to take care that the requirements of the Act have been substantially complied with and that the Administration's files contain data showing such compliance.

by federal personnel, he is, at this time at least, confined there by virtue of the order of the Oklahoma court, and not "under or by color of the authority of the United States," as that phrase is used in 28 U.S.C.A. § 2241. Hence, 28 U.S.C.A. § 2254 is applicable, and petitioner is required to show that he has exhausted available Oklahoma remedies, or that no such remedies exist, or that in the circumstances his Oklahoma remedies are inadequate to protect his rights. In the absence of such a showing the Court cannot consider the merits of petitioner's claim.

It is not suggested that petitioner has applied to any Oklahoma court for relief from his present confinement. Indeed, it is conceded that he has not done so. Nor can the Court say that there is an absence of available and adequate Oklahoma remedies, or that petitioner is so circumstanced that such remedies would be ineffective to protect his constitutional rights.

As to petitioner's mental condition, it has been observed that under the express terms of the Uniform Act petitioner is subject to the continuing jurisdiction of the Oklahoma courts to determine whether he is now sane or insane and to order his release should it be determined that his continued confinement is no longer necessary, and respondent so concedes.

With regard to the original procedural validity of the Oklahoma commitment and assuming without deciding that in connection with the proceedings before the Oklahoma court petitioner was denied procedural due process to an extent sufficient to subject the commitment to either direct or collateral attack, the Court will not presume that petitioner cannot obtain adequate relief in the Oklahoma courts.

While it may be somewhat inconvenient for petitioner, confined as he is in Arkansas, to seek relief in Oklahoma, the Court does not find that this inconvenience is sufficient to show that remedies in Oklahoma would be ineffective to protect the rights of the petitioner. Petitioner is not violently insane, nor is he in close confinement. He is not a pauper in the strict sense, and he has employed an attorney to represent him. It is clear that respondent is not holding petitioner in custody merely for the sake of so doing, and it is not to be anticipated that the Veterans Administration will put obstacles in the way of reasonable and appropriate proceedings in Oklahoma to secure an adjudication as to the validity of petitioner's original commitment and, what is more important from a practical standpoint, a determination of his present mental condition. On the contrary, if proceedings are brought in Oklahoma, and if the Oklahoma court undertakes to pass on the contentions advanced by petitioner, he can probably expect that the Veterans Administration will cooperate with that court in its efforts to make a correct determination.[3] Even if it turns out that petitioner cannot be transported to Oklahoma to appear in court, his deposition and the depositions of other witnesses can be taken in Arkansas, and the records of the hospital can be made available to the Oklahoma court. If it turns out ultimately that petitioner can obtain no relief in Oklahoma, he is free to bring another petition before this Court, but he is required first to make an effort to secure relief from the courts of his home State.

It should be said that the requirement of exhaustion of State remedies prescribed by section 2254 has particular cogency in a case of this kind. The provisions of the Uniform Act which

3. One of the regulations of the Veterans Administration requires the Chief Attorney of the Administration to "render all assistance possible to the Courts in commitment cases." 38 C.F.R. § 13.-223. Still another regulation provides that if it is discovered that a veteran has been committed illegally and that it is necessary to have him legally committed, steps are to be taken at once to secure a legal commitment. 38 C.F.R. § 13.250.

permit incompetent veterans to be committed or transferred to the custody of the Veterans Administration for care and treatment are obviously highly beneficial to the class of veterans affected thereby, and also permit the Government to afford care and treatment to a maximum number of incompetent veterans without wasteful duplication of facilities. The administration of the Act by the State courts, State institutional personnel, and the Veterans Administration represents valuable State and federal cooperation in an important field in which all citizens have a substantial interest. Needless interference by the district courts will serve no good purpose, but, on the contrary, may tend to hinder the efficient administration of the Act and to be disruptive to necessary institutional routine.

A formal order will be entered discharging the order to show cause and dismissing the petition.